# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| BOBBIE MICHELLE SMITH, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 2:17-cv-2282-SHL-cgc |
| TIPTON COUNTY BOARD OF EDUCATION, | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiffs filed their Complaint on April 24, 2017, seeking damages under 26 U.S.C. § 7431 ("§ 7431"), alleging that Defendant disclosed confidential, employee tax information in violation of 26 U.S.C. § 6103 ("§ 6103"). (See generally ECF No. 1.) Defendant filed a Motion to Dismiss and/or for Summary Judgment on June 7, 2017, arguing that it could not violate § 7431 because, among other reasons, it does not administer a program under § 6103. (ECF No. 19.) Specifically, Defendant argues that it does not administer a program under the Food and Nutrition Act, which is the specific act upon which Plaintiffs rely in contending that Defendants are liable. Plaintiffs filed their Response in Opposition on July 5, 2017 (ECF No. 30), and Defendant replied on July 19, 2017. (ECF No. 34.)

As is more fully explained below, the Court finds that Defendant does not administer a program under the Food and Nutrition Act and thus **GRANTS** Defendant's Motion. Because the Court's holding reaches only the "administration of a program" element, the Court does not express an opinion as to Defendant's other arguments for dismissal.

## FACTS

Except where otherwise noted, the following facts, taken as true for purposes of this Motion, come from Plaintiffs' Complaint, filed April 24, 2017. (ECF No. 1.) On January 23, 2017, the Tipton County Board of Education emailed a document containing employee W2 information to an unknown third party. (Id. at ¶¶ 46–47.) According to Plaintiffs, Defendant admits that it sent this email in response to a "phishing email." (Id. at ¶¶ 44–45, 53.) The document included approximately 1,937 employees' names; addresses; social security numbers; nature, source and amount of income; deductions; exemptions; taxes withheld; tax payments and taxpayer identifying numbers. (Id. at ¶¶ 50–52.)

Because Plaintiffs' theory of liability relies on Defendant's involvement with certain social programs, the Complaint includes several relevant allegations related to these programs. To begin, Plaintiff alleges that the Tennessee Board of Education is responsible for administering the National School Lunch Program ("NSLP"), which provides free or low cost lunches to low income students. (Id. at ¶ 30, 32.) Pursuant to Tennessee Code Annotated § 49-6-2302, each school board is required to "establish a school lunch program in every school under its jurisdiction." (Id. at ¶ 34.) Thus, the Tennessee Department of Education and Defendant entered into an agreement "cover[ing] the operation of the [N]ational [S]chool [L]unch [P]rogram." (Id. at ¶ 33.) This program "provides [students] assistance in the form of free school lunches[,]" and any child who receives benefits provided by the supplemental nutrition assistance program ("SNAP") are automatically eligible for the free lunch program. (Id. at ¶¶ 30–31, 35–36.) SNAP is a program provided for in the Food and Nutrition Act. Therefore, Plaintiffs allege that the lunches provided pursuant to the NSLP are SNAP benefits under the Food and Nutrition Act of 2008, meaning that, according to Plaintiffs, Defendants "administer" SNAP. (Id. at ¶ 32.)

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure ("FRCP") 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A pleading must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and should nudge a plaintiff's claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal 556 U.S. at 678. Courts are "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In considering whether a plaintiff has brought a plausible claim, the Court will not rely on extrinsic evidence. See Cunningham v. Osram Sylvania, Inc., 221 Fed. App'x 420, 422–23 (6th Cir. 2007). The Court will, however, "consider the complaint in its entirety," including "documents incorporated into the complaint by reference." Solo v. United Parcel Serv. Co., 819 F.3d 788, 794 (6th Cir. 2016) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## ANALYSIS

As an initial matter, the Court notes that Defendant's Motion is properly considered as one for dismissal pursuant to FRCP 12(b)(6). Taking all of the allegations of Plaintiffs' Complaint as true, the Court is left with a purely legal question—given Defendant's administration of the NSLP and the connection between that program and SNAP, does it also "administer" SNAP? Resolution of this issue requires an analysis of the statutes at issue, using statutory construction principles. There is no need for a fact determination or consideration of extrinsic evidence.

As for the legal issue, Plaintiffs' claim is brought under 26 U.S.C. § 7431, which states that a taxpayer may bring a civil action for damages against "any person who . . . knowingly, or by reason of negligence, inspects or discloses any . . . return information with respect to a taxpayer in violation of any provision of section 6103." 26 U.S.C. § 7431(a)(2). Section 6103 prohibits "any local agency administering a program listed in [§ 6103](l)(7)(D)" from disclosing "return information." (ECF No. 1 at ¶ 38); see also 26 U.S.C. § 6103(a)(2). Thus, for Plaintiffs to prevail on their claim for damages under 26 U.S.C. § 7431, they must show that Defendant (1) is a "person," (2) who knowingly or negligently disclosed "return information" in violation of § 6103 and (3) that Defendant "administer[s] a program" listed under § 6103(l)(7)(D).

Plaintiffs allege that Defendant is a local agency that administers a program listed under § 6103(l)(7)(D), specifically the Food and Nutrition Act. (ECF No. 1 at ¶¶ 30, 38.) However, this allegation is a legal conclusion, based on the undisputed fact that Defendant administers the NSLP. Specifically, Plaintiffs argue that the NSLP constitutes a "SNAP [b]enefit," because children who receive SNAP benefits are automatically eligible for free lunches under the NSLP. (Id. at ¶¶ 30–31.) Plaintiffs contend that this automatic eligibility criterion leaves the Court with

what is "likely a mixed question of fact and law." (ECF No. 30 at 9–10.) Plaintiffs admit that the meaning of "administer" is a legal question but argue that determining whether Defendant's involvement with SNAP recipients means that Defendant "administers" a program under the Food and Nutrition Act is a question of fact that requires discovery.[1] (Id. at 10.)

In its Motion to Dismiss, Defendant concedes that SNAP is a program "operated pursuant to the Food and Nutrition Act," but denies that it administers SNAP or a SNAP benefit. (ECF No. 19-1 at 7.) Instead, Defendant argues that it operates school nutrition programs pursuant to the Tennessee School Nutrition Standards Act, Tenn. Code Ann. § 49-6-2303, the National School Lunch Act ("NSLA"), 42 U.S.C. § 1751 and the Child Nutrition Act of 1966, 42 U.S.C. § 1771, all of which, Defendant asserts, are separate and apart from the Food and Nutrition Act. (ECF No. 19-1 at 8.) Moreover, Defendant argues that it does not accept applications for SNAP benefits, determine household eligibility, issue SNAP coupons or other benefits, implement or enforce SNAP regulations, or "otherwise control or monitor the SNAP program in Tennessee." (Id. at 7–8.) Further, Defendant contends that the Tennessee Department of Human Services is

---

[1] Plaintiffs then argue that an affidavit attached to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment creates a material question of fact that requires discovery. The Court disagrees. In the affidavit, Henry Glass, the Food Service Supervisor for Tipton County Schools, admits that "[t]he school nutrition program is operated in compliance with the United States Department of Education rules, regulations and guidelines and also according to the Agreement to Administer the School Nutrition Program(s) with the Tennessee Department of Education." (ECF No. 19-5 at 2.) He also states that "Tipton County School students who qualify for SNAP benefits are eligible for free meals provided by the district's school nutrition program" and that "the TDOE electronically shares the [identities of students whose families receive SNAP benefits] with Tipton County Schools so that students who are newly eligible for SNAP will be automatically eligible for and will receive free meals." (Id. at 3.) Thus, Plaintiffs seem to suggest that evidence of a certain level of entanglement translates into Defendant administering the Food and Nutrition Act. However, Glass's statements are consistent with the statutory scheme of the NSLP—the statute that Defendant admits it administers. Because Glass's statements do nothing more than affirm that Defendant follows the NSLP statute, the Court finds that discovery is not necessary. These statements do not create a genuine question of material fact requiring the Court to analyze Defendant's Motion as one for Summary Judgment.

the State agency responsible for issuing benefits under the Food and Nutrition Act (e.g. benefits provided by SNAP) and that SNAP benefits may only be used "to purchase food from retail food stores." (Id. at 6–7 (citing 7 U.S.C. §§ 2013(a), 2016(b)).)

The Court finds that, as a matter of law, Defendant does not administer a program pursuant to the Food and Nutrition Act. To begin, in enacting the Food and Nutrition Act of 2008, Congress created SNAP for the purpose of providing eligible households "an opportunity to obtain a more nutritious diet" by issuing recipients an allotment "to purchase food from retail food stores. . . ." 7 U.S.C. § 2013(a) (2014) (emphasis added). In contrast, Congress enacted the NSLA with the express purpose of "providing an adequate supply of foods . . . for the establishment, maintenance, operation, and expansion of nonprofit school lunch programs." 42 U.S.C. § 1751 (emphasis added). A child is deemed "automatically eligible for a free lunch" under the NSLA if he or she falls into one of seven categories.[2] 42 U.S.C. § 1758(b)(12)(A). One such category includes children who are "member[s] of a household receiving assistance under the supplemental nutrition assistance program authorized under the Food and Nutrition Act." 42 U.S.C. § 1758(b)(12)(A)(i).

Plaintiffs' argument hinges on this automatic eligibility criterion. Plaintiffs contend that distribution of free school lunches under the NSLA constitutes the administration of a SNAP benefit and thus Defendant must be administering SNAP. (See ECF Nos. 1 at ¶¶ 30–38, 30 at 9–10.) Plaintiffs' argument, however, misses the mark.

---

[2] Section 1758 of the NSLA provides that "[a] child shall be considered automatically eligible for a free lunch and breakfast under this Act and the Child Nutrition Act . . . if the child is[:]" (1) "a member of a household receiving assistance under [SNAP]"; (2) a member of a family receiving Social Security benefits; (3) "enrolled as a participant in a Head Start program authorized under the Head Start Act"; (4) homeless; (5) "served by the runaway and homeless youth grant program established under the Runaway and Homeless Youth Act"; (6) a migratory child; or (7) a foster child. See 42 U.S.C. § 1758(b)(12)(A)(i)–(vii).

6

"Administer" is not defined in 26 U.S.C. § 6103 or in the Internal Revenue Code's definitions section.³ See 26 U.S.C. § 7701. "When a term goes undefined in a statute, we give the term its ordinary meaning." Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566 (2012). The Oxford American Dictionary defines "administer" as meaning, to "manage and be responsible for the running of"; "be responsible for the implementation or use of (law or resources)"; or "give help or service." Administer, New Oxford American Dictionary (3d ed. 2010).

Aside from the "automatic eligibility" criterion, there is no connection between the NSLA (and its NSLP) and the Food and Nutrition Act (and its SNAP). The two programs are administered separately and independently from each other, and are found in two different statutes. The former is included under Title 42 of the United States Code and the latter under Title 7.

In addition, different governmental entities manage and are responsible for the running of these two programs. Under the Food and Nutrition Act, administrative responsibilities, such as certifying applicant households and issuing benefits, are placed on State agencies. 7 U.S.C. § 2020(a)(1). In Tennessee, the department of human services ("DHS") is the entity responsible for "supervis[ing] the administration of the food stamp or food assistance program," which includes, among other responsibilities: making rules and regulations for carrying out this program, establishing "standards for determining the amount of food stamp assistance" that any person or household receives and complying with reporting requirements established by the United States Department of Agriculture. Tenn. Code Ann. § 71-5-304; see also § 71-5-303(6) (defining "department" as meaning "the department of human services").

---

³ Nor is "administer" defined in the Regulations promulgated by the Secretary of Treasury.

7

To qualify for benefits under the Food and Nutrition Act, Tennessee applicants must file an application in the "county office" in which they reside, and the determination of the amount of assistance provided must be approved by an "area manager." Tenn. Code Ann. §§ 71-5-306 to -307. In turn, "county office" is defined as "the county office of the department of human services," and "area manager" is defined as "the director or manager of the county or area office of the department of human services." Tenn. Code Ann. § 71-5-303(5), (2).

In contrast, the Tennessee board of education and local school boards (including Defendant) are the entities responsible for administering the school lunch program under the NSLA. Under the NSLA, federal funds are appropriated directly to State educational agencies who then disburse these funds to schools participating in the school lunch program. 42 U.S.C. §§ 1753(b), 1757, 1758(b). In addition to managing the funding of the school lunch program, the Tennessee commissioner of education and state board of education are required to establish the minimum nutrition requirements for the program, the standards of income eligibility, uniform methods for determining eligibility and ensuring that the program complies with "the standards and requirements of the federal National School Lunch Act." Tenn. Code Ann. § 49-6-2303. Moreover, every local school board is responsible for establishing a school lunch program in every school that complies with the rules and regulations made by the commission and state board of education. Tenn. Code Ann. § 49-6-2302(a)(1); see also 42 U.S.C. § 1758b.

Thus, the statutory schemes governing the Food and Nutrition Act and the NSLA demonstrate that different governmental entities are "responsible for the running of" each. SNAP benefits provided under the Food and Nutrition Act are handled exclusively by Tennessee's DHS and its county offices. DHS makes eligibility determinations, establishes the rules and regulations and determines the amount of assistance to be provided in accordance with

the Food and Nutrition Act.  <u>See</u> Tenn. Code Ann. §§ 71-5-304 to -307.  In contrast, the NSLA and its corresponding state statute, the Tennessee School Nutrition Standards Act, both place responsibility on local school boards and state boards of education to establish nutritional standards and to manage the overall implementation of the school lunch program.

Lastly, the express purpose and type of benefit provided under each Act further exhibit the division between the two programs.  As noted above, the purpose of the Food and Nutrition Act is to provide eligible households "an opportunity to obtain a more nutritious diet" by issuing recipients an allotment "to purchase food from retail food stores."  7 U.S.C. § 2013(a).  This Act defines "benefit" as "the value of supplemental nutrition assistance provided to a household."[4]  7 U.S.C. § 2012(d).  "Household," in turn, is defined as an individual or group of individuals who "customarily purchases food and prepares meals for home consumption."  7 U.S.C. § 2012(m)(A)–(B).  Moreover, the benefits provided under SNAP "shall be used only to purchase food from retail food stores."  7 U.S.C. §§ 2013, 2016(b).  A "retail food store" is defined, in relevant part, as "an establishment . . . that sells food for home preparation and consumption."  7 U.S.C. § 2012(o)(1).  Thus, SNAP benefits are provided to households for the purpose of home consumption.

On the other hand, the funds provided under the NSLA are to be used solely for providing lunch to students in nonprofit schools—not, the Court notes, to households for home consumption.  42 U.S.C. § 1751; <u>see also</u> Tenn. Code Ann. § 49-6-2302.

Accordingly, the reference to the Food and Nutrition Act in the NSLA as a simple eligibility standard is too tenuous of a connection to show that Defendant "administers" a program under the Food and Nutrition Act.  No other connection links Defendant to SNAP or

---

[4] The Food and Nutrition Act defines "supplement nutrition assistance program" as "the program <u>operated pursuant to this Act</u>."  7 U.S.C. § 2012(t).

any other program under § 6103.  Therefore, because Defendant does not administer a § 6103 program, the actions at issue here, even though admitted by Defendant, cannot, as a matter of law, violate § 7431 of the IRC.

## CONCLUSION

Based on the foregoing, Plaintiffs' Complaint fails to state a claim upon which relief may be granted and thus the Court **GRANTS** Defendant's Motion.  Plaintiffs' claim is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED,** this 31st day of March, 2018.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE
